```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
CARTELL JOHNSON,                                    :
                                                    :
                              Plaintiff,            :      MEMORANDUM
                                                    :      & ORDER
              -against-                             :      15-CV-1625 (SMG)
                                                    :
THE CITY OF NEW YORK, DETECTIVE MICHAEL             :
ENRIGHT, and POLICE OFFICER MICHAEL                 :
WILLIAMS,                                           :
                                                    :
                              Defendants.           :
------------------------------------------------------------------- x
```
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Cartell Johnson brings this action pursuant to 42 U.S.C. § 1983. Plaintiff's lawsuit arises from his early morning arrest on May 17, 2014. Defendant Michael Williams, an officer of the New York City Police Department ("NYPD"), made the arrest after learning that plaintiff was identified as a perpetrator in an outstanding investigation card ("I-card"). More than two years earlier, defendant NYPD Detective Michael Enright caused the I-card to be issued after fellow officers received a domestic violence complaint from plaintiff's former girlfriend, who alleged that plaintiff grabbed her by her hair, pushed her into a wall, and grabbed her cellphone and broke it during an incident that took place in January 2012.

The parties have consented to reassignment of this case to me for all purposes pursuant to 28 U.S.C. § 636(c). Docket Entry 28. Defendants now move for summary judgment. Docket Entry 30. Although the amended complaint asserts various claims against the named defendants, plaintiff states in his response to defendants' motion that he does not oppose judgment dismissing each of his claims except one for false arrest against defendant Williams. Plaintiff's Memorandum of Law in Opposition at 2 ("Pl.'s Mem."), Docket Entry 39. For the following

reasons, defendants' motion for summary judgment on plaintiff's false arrest claim against defendant Williams is GRANTED.

## FACTS

The following facts present the evidence in the light most favorable to plaintiff.[1] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). On January 1, 2012, NYPD Officer Marilyn Morock of the 67th Precinct received a report of a domestic dispute from plaintiff's ex-girlfriend, who is identified herein as S.B. Defs.' R. 56.1 ¶¶ 1-2; Pl.'s R. 56.1 ¶¶ 1-2. According to the police report prepared by Officer Morock, S.B. stated that Johnson, her ex-boyfriend and the father of her son, yelled at her, "grab[ed] her by the hair and pushed her into the wall," grabbed her cellphone and broke it, "pushed their son to the ground," and then fled the scene. Detective Bureau Case Log for Complaint No. 2012-067-00012 ("Case Log") at 1, Sanborn Decl., Ex. 4, Docket Entry 38-4. The same report identifies the offense committed by Johnson as criminal mischief in the third degree, a Class E felony, in violation of N.Y. Penal Law § 145.05.[2] *Id.*

Officer Morock also prepared a Domestic Incident Report ("DIR") in connection with S.B.'s allegations. The DIR reiterates the accusations made by S.B. against Johnson noted above and adds that S.B. alleged that Johnson "began pushing me and screaming that he was going to kill me." NYPD Domestic Incident Report, dated January 1, 2012, at 2, Siskind Decl., Ex. B,

---

[1] The facts are drawn from the following: Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Defs.' R. 56.1"), Docket Entry 32; Plaintiff's Response to Defendants' Statement of Material Facts ("Pl.'s R. 56.1"), Docket Entry 37; and Defendants' Response to Plaintiff's Statement of Additional Facts ("Defs.' Resp. to Pl.'s R. 56.1"), Docket Entry 43. Facts are also drawn from supporting evidentiary materials submitted as exhibits to the Declaration of Shira R. Siskind, August 16, 2016 ("Siskind Decl."), Docket Entry 33, and the Declaration of James Sanborn, Sept. 21, 2016 ("Sanborn Decl."), Docket Entry 38.

[2] The complaint form appears to contain a typographical error in that it also reports a violation of N.Y. Penal Law § 145.23, or cemetery desecration in the first degree. Case Log at 1. The internal NYPD code for this offense is "269," while the code for Criminal Mischief in the Fourth Degree, presumably the intended charge, is "259." *See* NYPD Domestic Incident Report, dated January 1, 2012, at 1, Siskind Decl., Ex. B, Docket Entry 33-2.

2

Docket Entry 33-2. The DIR lists the offenses committed by Johnson as criminal mischief in the fourth degree, a Class A misdemeanor, in violation of N.Y. Penal Law § 145.00, and harassment in the second degree, a violation under N.Y. Penal Law § 240.26. *Id.* at 1.

On January 4, 2012, Enright, a detective in the 67th Precinct Detective Squad, initiated the process of having an I-card issued for plaintiff based upon the complaint made by S.B. Defs.' R. 56.1 ¶¶ 5-6; Pl.'s R. 56.1 ¶¶ 5-6; Enright Dep. Tr. at 22:13-23:19, Sanborn Decl., Ex. 1, Docket Entry 38-1. An I-card is an internal NYPD form issued by an officer when there is a suspect, witness, or perpetrator to be investigated. Enright Dep. Tr. at 5:8-6:17; *see also Henning v. City of New York*, 2012 WL 2700505, at *1 n.2 (E.D.N.Y. July 5, 2012) ("The NYPD issues I-cards, *inter alia*, to give notice of persons sought for whom there is probable cause for arrest. [I-cards] have been described as investigation cards used by members of the NYPD to alert other members of probable cause to arrest a subject.") (internal quotation marks and citations omitted).

The I-card was issued at 11:30 p.m. on January 7, 2012. *See* Investigation Card for Cartell Johnson ("Johnson I-card"), Sanborn Decl., Ex. 2, Docket Entry 38-2. Earlier that evening, at about 9:45 p.m., Detective Michael Braithwaite conducted a follow-up interview with S.B. over the telephone. S.B. told Braithwaite that when she went to Johnson's apartment to drop off school supplies for their child, Johnson "was very angry and started to yell at her and call her a slut." Defs.' R. 56.1 ¶ 3; Pl.'s R. 56.1 ¶ 3; Case Log at 6. S.B. also told Braithwaite that Johnson was "standing very close to her," she "thought she was about to be assaulted," and that when she "took out her phone . . . to call 911," he "took her phone and broke it" before fleeing the scene. Case Log at 6. Morock's report, the DIR, and Braithwaite's report of the

3

follow-up interview with S.B. each identify plaintiff as the individual who committed the acts S.B. described. Defs.' R. 56.1 ¶ 4; Pl.'s R. 56.1 ¶ 4.

The I-card references the report filed by Officer Morock on January 1, 2012, lists "Cartell Johnson" as the subject, and indicates that Johnson is sought as a perpetrator and that there is probable cause to arrest Johnson for "Criminal Mischief," in violation of N.Y. Penal Law § 145.05, a Class E felony. It appears from the face of the I-card that it was issued by Detective Braithwaite.

The next event of significance to this case did not occur until more than two years later. Late in the evening on May 16, 2014, plaintiff visited the 70th Precinct stationhouse located in Brooklyn, New York, to pick up his friend's car keys. Defs.' R. 56.1 ¶¶ 7-8; Pl.'s R. 56.1 ¶¶ 7-8. Defendant Williams, who was at the front desk, asked plaintiff for his driver's license to ensure that he could lawfully assume control of his friend's car. Williams Dep. Tr. at 6:15-7:9, Sanborn Decl., Ex. 6, Docket Entry 38-6. Plaintiff provided Williams with an identification document but, because it was not a driver's license, Williams conducted a computer name check to determine whether, in fact, plaintiff had a valid license. Defs.' R. 56.1 ¶¶ 9-11; Pl.'s R. 56.1 ¶¶ 9-11; Williams Dep. Tr. at 7:10-18. Approximately ten minutes after conducting the name check, at 2:40 a.m. on May 17, 2014, plaintiff was placed under arrest. Defs.' R. 56.1 ¶ 16; Pl.'s R. 56.1 ¶ 16; Williams Dep. Tr. at 17:3-6. What precisely transpired during those ten minutes is a matter of some dispute between the parties.

According to Williams, the computer name check he conducted revealed an "active" I-card for plaintiff. Defs.' R. 56.1 ¶ 12; Williams Dep. Tr. at 7:19-8:8. Accordingly, Williams testified, he "immediately called the 67th Precinct Detective Squad" and spoke with an individual he could not identify by name, who informed Williams that "the I-card was still active

and that . . . there was probable cause to arrest plaintiff." Defs.' R. 56.1 ¶ 13; Williams Dep. Tr. at 12:5-23. Williams further testified that when he informed his supervisor, Sergeant Valenti Khazin, that there appeared to be a 2012 "complaint [that] was still open" relating to plaintiff, Khazin instructed Williams to arrest Johnson. Williams Dep. Tr. at 13:12-24; Arrest Report, Siskind Decl., Ex. I, Docket Entry 33-9. Until he reviewed the I-card, Williams had no reason to arrest plaintiff. Williams Dep. Tr. at 14:20-23.

During the course of processing Johnson's arrest, Williams called the Kings County District Attorney's Office to report that an arrest had been made. Defs.' R. 56.1 ¶ 20; Williams Dep. Tr. at 18:5-19:2. At some point later that day, however, the King's County District Attorney's Office declined prosecution because the "statute of limitations ha[d] run." Defs.' R. 56.1 ¶ 22; Declined Prosecution Form, Siskind Decl., Ex. J, Docket Entry 33-10. Accordingly, plaintiff was released from custody at about 6:15 p.m. on May 17, 2014. Defs.' Resp. to Pl.'s R. 56.1 ¶ 45; Pl.'s R. 56.1 ¶ 45.

Plaintiff's version of events differs from defendants' recounting in several respects. First, contrary to Williams' testimony, plaintiff claims that the I-card was *not* active at the time of his arrest, and that it was in fact "closed" on April 3, 2012. Pl.'s R. 56.1 ¶ 28; Case Log at 13.[3] Plaintiff further asserts that the I-card was not reactivated by Detective Enright until late on May 17, 2014, *after* Johnson's early morning arrest and *after* he was released from custody. Pl.'s R. 56.1 ¶¶ 41-45. Plaintiff also claims that once the I-card was discovered and Johnson was placed

---

[3] Plaintiff's contention that the I-card was closed is apparently based on Follow-Up No. 9 in the Detective Bureau Case Log, dated April 3, 2012, which is titled "Complaint – Follow Up Informational Report – Closing." Case Log at 13. The "Topic/Subject" of the report is "(Closing) Request Closing C12," and under the "Summary of Investigation" tab, the following is written: "1. On April 3, 2012 at 1520 hours I spoke with Detective Beasley, a Domestic Violence Officer at the 67 Precinct, and apprised her of this case. 2. An I card has been activated for the subject of this investigation. I request this case be closed C12: Probable cause to arrest and an I card has been activated." *Id.* According to Detective Enright, "C12" refers to an outstanding perpetrator with an I-card issued and indicates that a case is being closed temporarily pending further developments. *See* Enright Dep. Tr. at 13:8-14:14.

5

under arrest, Williams failed to "obtain instructions from the appropriate authority," in violation of NYPD policy. Pl.'s R. 56.1 ¶¶ 52-57; *see also* NYPD Patrol Guide Procedure No. 208-23 at 2, Sanborn Decl., Ex. 10, Docket Entry 38-10. Detective Enright testified at his deposition that the "appropriate authority" in this case would have been the detective who initially issued the I-card or instructed that it be issued. Enright Dep. Tr. at 61:7-21. Ultimately, plaintiff was in custody for 15 hours and 35 minutes before the District Attorney's Office declined prosecution and he was released. *See* Arraignment Report, Sanborn Decl., Ex. 7, Docket Entry 38-7.

## DISCUSSION

*A. Summary Judgment Standards*

Summary judgment is properly granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion brought under Rule 56, "[t]he court 'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Perlman v. Fid. Brokerage Servs. LLC*, 932 F. Supp. 2d 397, 406 (E.D.N.Y. 2013) (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)).

The initial burden of establishing that there are no genuine issues of material fact falls on the moving party; if the movant meets that burden, the non-moving party must produce evidence of specific facts that raise a genuine issue for trial to avoid summary judgment. *Anderson*, 477

U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 35-36 (2d Cir. 1996). This evidence may not consist of "mere conclusory allegations, speculation, or conjecture," *Gov't Emps. Ins. Co. v. Excel Imaging, P.C.*, 869 F. Supp. 2d 367, 371 (E.D.N.Y. 2012) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996)), and "[t]here must be more than a 'scintilla of evidence'" to defeat a summary judgment motion. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

  B. *Section 1983*

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). To prevail on a claim brought under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

  C. *False Arrest*

To prevail on a false arrest claim brought under either § 1983 or New York law, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *see also Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (noting that § 1983 false arrest claims are governed by "the law of the state in which the arrest occurred"); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (observing that a § 1983 false arrest claim "is

substantially the same as a claim for false arrest under New York law"). In this case, only the element of privilege is contested.

An arrest is privileged if it is supported by probable cause. *See Russ v. Chavers*, 2013 WL 1338819, at *7 (E.D.N.Y. Mar. 29, 2013). Accordingly, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest."[4] *Weyant*, 101 F.3d at 852 (citation omitted). An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). In considering whether probable cause exists, "[c]ourts should look to the totality of the circumstances and must be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation and quotation marks omitted).

Whether an arrest is reasonable "does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). Rather, "the relevant inquiry is into the information in possession of the arresting officer at the time of the arrest." *Moore v. City of New York*, 2015 WL 1198084, at *4 (E.D.N.Y. Mar. 16, 2015) (citation omitted). The test is an objective one; "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. . . . [and] his subjective reason for

---

[4] Although plaintiff's amended complaint seems to also assert a claim for false imprisonment, *see* Am. Compl. ¶ 41, he does not indicate in his opposition to defendants' motion whether he opposes summary judgment on that claim. *See* Pl.'s Mem. at 2. In any event, a false imprisonment claim, like one for false arrest, is subject to dismissal upon a showing of probable cause. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citing *Zanghi v. Inc. Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985)). I therefore do not address that claim separately.

8

making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Rather, "the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest *objectively* provided probable cause to arrest." *Jaegly*, 439 F.3d at 153 (emphasis added) (citation omitted). Even "the crime identified by the officer at the time of arrest . . . need not be supported by probable cause, as long as there existed probable cause to arrest for some crime." *Petway v. City of New York*, 2012 WL 2254246, at *4 (E.D.N.Y. June 14, 2012) (citation omitted).

It is well-settled that information received from a putative victim or an eyewitness to a crime is sufficient to provide a "law enforcement official [with] probable cause to arrest . . . unless the circumstances raise doubt as to the person's veracity." *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012) (quoting *Panetta*, 460 F.3d at 395). Of particular relevance here, it is also well-settled that an arrest may be supported by probable cause even if the arresting officer does not possess independent, firsthand knowledge of the suspect's alleged criminal wrongdoing. Under the collective knowledge doctrine or "fellow officer" rule, "an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (citing *United States v. Hensley*, 469 U.S. 221, 230-33 (1985); *United States v. Canieso*, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972)); *see also Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("The existence of probable cause need not be assessed on the basis of the knowledge of a single officer."); *Watkins v. Ruscitto*, 2016 WL 3748498, at *6 (S.D.N.Y. July 11, 2016) ("[A]rresting officers do not need to independently determine that probable cause exists as long as the officer ordering the arrest

9

possesses sufficient probable cause to direct it.") (citation omitted). Simply put, for purposes of establishing probable cause, the knowledge of one officer is ascribed to all other officers involved in the case. *Colon*, 250 F.3d at 135; *Watkins*, 2016 WL 3748498, at *7.

The policy concern underlying the collective knowledge doctrine is that the complexities of modern law enforcement work, particularly in a large urban police department, require that officers be permitted to rely on the accuracy of information provided by their colleagues. *See United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986) ("[T]he arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates.") (citation omitted). Accordingly, where, as here, an officer is acting based upon the knowledge of a fellow officer, "the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably." *Watkins*, 2016 WL 3748498, at *7 (citing *Golphin v. City of New York*, 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011)).

Here, plaintiff's arrest at the 70th Precinct on May 17, 2014, was lawful because it was supported by probable cause and thus privileged, and because Officer Williams acted reasonably in relying upon the I-card as a basis for arresting plaintiff. It is undisputed that on January 1, 2012, Officer Morock received a complaint from S.B. alleging that Johnson, her ex-boyfriend, grabbed her by the hair and pushed her into a wall, grabbed her cellphone from her and broke it, and pushed their son to the ground. It is also undisputed that Officer Morock prepared a report based upon the complaint she received from S.B., as well as a DIR that repeated S.B.'s principal allegations, along with the additional allegation that Johnson screamed at S.B. that he was going to kill her. It is further undisputed that several days later, on January 7, 2012, Detective Braithwaite conducted a follow-up interview with S.B. over the telephone, and that S.B.

informed him that when she visited Johnson's apartment to drop off school supplies for their child, he started to yell at her and called her a slut. S.B. also told Braithwaite that Johnson was standing so close to her that she felt she was about to be assaulted and that, when she took out her cellphone to call 911, Johnson took the phone from her and broke it.

The allegations made by S.B. against Johnson gave rise to probable cause to believe that Johnson had committed, among other offenses, criminal mischief in the third degree, a Class E felony. Section 145.05 of the New York Penal Law provides that "a person is guilty of criminal mischief in the third degree when, with intent to damage property of another person, and having no right to do so . . . he or she . . . damages property of another person in an amount exceeding two hundred fifty dollars." N.Y. Penal Law § 145.05. It was reasonable for the officers to conclude that the value of the cellphone exceeded $250 and that the facts alleged by S.B. therefore gave rise to probable cause to believe that Johnson had committed criminal mischief in the third degree. Moreover, even if the cellphone did not have a value in excess of $250, the officers would have had probable cause to arrest Johnson for committing criminal mischief in the fourth degree. *See* N.Y. Penal Law § 145.00 ("A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she intentionally damages property of another person."). Based upon S.B.'s complaint, Detective Enright directed that an I-card be issued. The I-card appears to have been filed by Detective Braithwaite after review by Enright, and states that plaintiff was being "sought as [a] perpetrator – probable cause to arrest."

It is undisputed that plaintiff came to the 70th Precinct some two and a half years later, on the evening of May 16, 2014, seeking to recover his friend's car keys. It is also undisputed that, when Johnson failed to present a driver's license, defendant Williams conducted a computer

name check to confirm that plaintiff had one. According to Williams' uncontroverted testimony, an active I-card "popped up" when he ran plaintiff's name through the NYPD's Enterprise Search Portal. Williams Dep. Tr. at 7:19-8:8. Williams further testified that when he saw the I-card, he informed his supervisor that Johnson had an active I-card. *Id.* at 12:5-14. Williams then called the 67th Precinct Detective Squad, to which the officers who issued the card were assigned, and spoke with "somebody from the detective squad who told [him] that the I-card was still active and that . . . there was probable cause to arrest." *Id.* at 12:15-18. Williams testified that he relayed this information to his supervisor, Sergeant Khazin, who, in turn, told Williams to arrest plaintiff. *Id.* at 12:18-13:6.

Officer Morock's report, the DIR, and the follow-up interview by Detective Braithwaite clearly *did* give rise to probable cause to arrest Johnson for criminal mischief in the third degree. S.B. twice reported that plaintiff grabbed her cellphone from her and broke it. As noted above, law enforcement officers are entitled to rely upon information received from a putative victim, such as S.B., absent circumstances raising doubt about the victim's veracity. Plaintiff has not identified any such circumstances in this case. Moreover, Williams acted diligently, carefully, and above all, reasonably, in deciding whether to arrest plaintiff. Once he discovered the I-card, Williams did not simply proceed to arrest plaintiff based upon the I-card without confirming its active status. Rather, he first telephoned the precinct where the detectives who issued it were assigned. A detective told Williams that the I-card was active and that the facts known to the officers from that precinct gave rise to probable cause to arrest. Pursuant to the collective knowledge doctrine or "fellow officer" rule, Williams was entitled to rely on this information to conclude that he had probable cause to arrest plaintiff. *See Watkins*, 2016 WL 3748498, at *7 (holding that arresting officers were entitled to rely upon I-card and determination of the issuing

12

officer that there was probable cause to arrest); *Golphin*, 2011 WL 4375679, at *2 ("[T]he law shields an arresting officer from liability for false arrest if the officer relies on a fellow officer who vouches for probable cause.") (citation omitted). Accordingly, defendant Williams had probable cause to arrest plaintiff, thus defeating plaintiff's false arrest claim.

Plaintiff makes several arguments in opposition to summary judgment. Plaintiff's contentions, however, fail to raise a material question of fact with respect to the existence of probable cause for his arrest or the reasonableness of Williams' actions.

Plaintiff first asserts that the I-card relied on by Williams was in fact closed on April 3, 2012, and was not reactivated until *after* he was arrested. Plaintiff contends that it was unreasonable for Williams to rely upon an inactive I-Card as a basis for placing plaintiff under arrest. Pl.'s Mem. at 9-10. But plaintiff's argument mischaracterizes the relevant testimony and evidence in this case. At his deposition, Detective Enright testified that the *case*—not the I-card—was temporarily closed on April 3, 2012, pending further developments, and that the case remained one with an "outstanding perpetrator and with an I card issued." Enright Dep. Tr. at 13:3-13:22; 14:3-14:14. The report "closing" the case similarly notes, "I request this case be closed C12; Probable cause to arrest and an I card has been activated." Case Log at 13. Enright testified that a "C12" case may be reopened automatically when an arrest is made. Enright Dep. Tr. at 18:14-18. Accordingly, while the *case* may have been temporarily closed from April 2012 to May 2014, this "closing" in no way invalidated the I-card or vitiated the probable cause for plaintiff's arrest.

Indeed, the status of the I-card is of limited significance in a case like this one, where the facts known to Williams' fellow officers were in fact sufficient to establish probable cause for plaintiff's arrest. Had probable cause been absent, Williams might nevertheless be able to avoid

13

liability for arresting plaintiff if he reasonably relied upon an I-card or other communication from a supervisor or fellow officer. *Watkins*, 2016 WL 3748498, at *7. But where, as here, the facts known to the police officers involved in the case establish probable cause, the status of the I-card becomes irrelevant.

Plaintiff next argues that defendant Williams may not invoke the collective knowledge doctrine because he failed to communicate directly with the detective who issued the I-card. Pl.'s Mem. at 10-11. In support of this argument, plaintiff relies on *Colon v. City of New York*, 2014 WL 1338730, at *4 (E.D.N.Y. Apr. 2, 2014), where the court stated that "for the collective knowledge doctrine to apply to actions taken by an officer, there must have been some communication between the officers involved." (citation omitted).

Plaintiff's reliance on *Colon* is misplaced. In *Colon*, although the court discussed the collective knowledge doctrine at some length, it never held or even suggested that an arresting officer must communicate with one specific fellow officer before the collective knowledge doctrine may apply. To the contrary, the court cited a series of precedents applying the collective knowledge doctrine and quoted several of them, including *Crawford v. City of New York*, 477 F. App'x 777, 779 n.1 (2d Cir. 2012), for the proposition that "[i]f one officer in a police department has knowledge of facts that establish probable cause to arrest a suspect, the suspect suffers no constitutional deprivation if he is arrested by a different officer who lacks such knowledge." *Colon*, 2014 WL 1338730, at *6. The defendant officer in *Colon* was denied summary judgment because, the court concluded, "a reasonable jury could find that at the time [he] participated in the arrests of the Plaintiffs, he was not aware of the facts supporting probable cause for Plaintiffs' arrest and had not been told that [his fellow officers] had determined that probable cause to arrest existed." *Id.* at *7. Here, of course, Williams learned that an I-card had

14

been prepared by a fellow officer indicating that there was probable cause to arrest plaintiff. Moreover, before placing plaintiff under arrest, Williams spoke with an officer from the precinct where the detective who issued the I-card was assigned and confirmed the I-Card's validity and active status. *Colon* is thus readily distinguishable from this case.

Plaintiff also asserts that the NYPD Patrol Guide requires an arresting officer to obtain instructions from an appropriate authority and that, in this case, the appropriate authority would be the detective who issued the I-card. Plaintiff's contention that Williams did not follow the protocol required by the NYPD Patrol Guide is insufficient to raise a material question of fact. Even if the NYPD Patrol Guide requires a step that Williams failed to take, that failure would not call into question the existence of probable cause or rise to the level of a violation of a constitutionally protected right.

Plaintiff's final argument is that Williams' reliance on the I-card was objectively unreasonable because the statute of limitations had expired on the offense it described. Pl.'s Mem. at 13. In support of this argument, plaintiff cites *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003), for the proposition that "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause."

This final argument fails for three reasons. First, it is factually inaccurate; the allegations made by S.B. provided probable cause to arrest for a crime that was not time-barred. Under New York law, the statute of limitations for a felony is five years, while the limitations period for a misdemeanor is two years. N.Y. Crim. Proc. Law § 30.10. According to S.B., the events giving rise to probable cause took place on January 1, 2012. Plaintiff was arrested on May 17, 2014. Accordingly, while the limitations period had by then run on any misdemeanor charge, the limitations period for a felony offense had not yet expired. The report prepared by Officer

Morock identifies the offense committed by plaintiff as criminal mischief in the third degree, a Class E felony, in violation of N.Y. Penal Law § 145.05. Case Log at 1. The I-card references the same offense. *See* Johnson I-card. As discussed above, the difference between criminal mischief in the third degree and criminal mischief in the fourth degree, a misdemeanor, depends upon whether the property destroyed has a value in excess of $250. *Compare* N.Y. Penal Law § 145.05, *with* N.Y. Penal Law § 145.00. Here, S.B. reported that plaintiff grabbed and broke her cellphone. It was reasonable for the officers who spoke to S.B. to believe, as they apparently did, that her cellphone had a value exceeding $250. *See* Case Log at 1 ("Perp also grabbed victim's cellphone and broke it. . . . Damage property over $250 dollars.").

Second, at least one court in this Circuit has held that "the statute of limitations is neither an element of the crime, nor a necessary component of probable cause" and is therefore "immaterial to the probable cause determination." *Sullivan v. LaPlante*, 2005 WL 1972555, at *4-8 (N.D.N.Y. Aug. 16, 2005). Two circuit courts have similarly held that the availability of a limitations defense does not bear on whether police officers may reasonably believe that there is probable cause to arrest. In *Sands v. McCormick*, 502 F.3d 263, 269 (3d Cir. 2007), the Third Circuit observed that "the application of the limitations period is not a clear cut matter in criminal prosecutions" and, considering that "[a] police officer has limited training in the law[,] . . . requiring him to explore the ramifications of the statute of limitations affirmative defense is too heavy a burden." Similarly, the Eleventh Circuit has concluded that arresting officers have "no responsibility to determine the viability of a statute of limitations defense" because "[t]he existence of a statute of limitations bar is a legal question that is appropriately evaluated by the district attorney or by a court after a prosecution is begun, not by police officers executing an arrest warrant." *Pickens v. Hollowell*, 59 F.3d 1203, 1207-08 (11th Cir. 1995).

16

Finally, even if the applicable statute of limitations barred plaintiff's prosecution, Williams would be entitled to summary judgment because he reasonably relied on an I-card stating that there was probable cause to arrest plaintiff for a felony offense. As the court in *Colon* observed, "[a]n arresting officer need not have knowledge of the underlying facts establishing probable cause to make an independent determination of whether probable cause exists—it is enough that the arresting officer be told that there is probable cause for arrest." 2014 WL 1338730, at *6. It is undisputed that that much happened here; defendants are therefore entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully requested to enter judgment accordingly and close the case.

/s/<br>
STEVEN M. GOLD<br>
United States Magistrate Judge

Brooklyn, New York
April 24, 2017

U:\#ZAK 2016-2017\Johnson v. City of New York (15cv1625) (SMG)\Motion for Summary Judgment - FINAL.docx